IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GENEVA WELLS, o/b/o,      *
EDDIE E. CONNER          *
                         *
      Plaintiff,         *
                         *
vs.                      *      Civil Action No. 03-00810-WS-B
                         *
JO ANNE B. BARNHART,     *
Commissioner of          *
Social Security,         *
                         *
      Defendant.         *

REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C.§ 1383 (c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The parties waived oral argument.  Upon careful consideration of the administrative record and the parties' argument as raised in their memoranda, the undersigned respectfully recommends that the decision of the Commissioner be **affirmed.**

I.    **Procedural History**

Plaintiff's mother, Geneva Wells, protectively filed, on behalf of her son, Plaintiff Eddie E. Conner, an application for supplemental security income benefits on August 22, 2000,

alleging that Plaintiff has been disabled since October 6, 1991 due to asthma, allergies, a reading disorder, and Attention Deficit/Hyperactive Disorder (ADHD)[1]. (Tr. 83-86, 116, 118, 120-121, 124, 158, 175-176).[2]  Plaintiff's application was initially denied on May 1, 2001, and a Request for Hearing was filed on May 14, 2001. (Tr. 68-69, 74-76).[3]  Administrative Law Judge (ALJ) Jerry C. Shirley conducted a hearing on February 21, 2002, which was attended by Plaintiff, his mother, Geneva Wells, and Plaintiff's attorney. (Tr. 42-64).

On April 25, 2002, ALJ Shirley entered an unfavorable decision wherein he found that Plaintiff has the severe impairments of asthma, allergic rhinitis, ADHD and a reading disorder, and that his impairments, when considered individually, or in combination, do not meet or medically equal a Listing. The ALJ further determined that Plaintiff's impairments do not functionally equal any listed impairment.

---

[1]  ADHD involves problems with sustained attention, concentration, task persistence (ability to finish tasks), and impulsiveness inappropriate for a child's age; some children may also manifest hyperactivity. *The Merck Manual - Second Home Edition*, http://www.merckhomeedition.com/home.html.

[2]  Plaintiff also filed an application for supplemental security income benefits on March 4, 1997, which was initially denied. (Tr. 80-82, 65-67, 70-73, 159). Plaintiff, however, did not seek review of that decision, and that decision is not now before the Court. (Tr. 19).

[3]  The reconsideration stage was eliminated from this case pursuant to testing modifications to the disability determination procedures. 20 C.F.R. §§ 404.906, 404.966, 416.1406 and 416.1466.

(Tr. 16-36).  On October 2, 2003, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, thus making the ALJ's decision the final decision of the Commissioner of Social Security. (Tr. 4-6).  The parties agree that this case is now ripe for review and is properly before this Court pursuant to 42 U.S.C. § 1383 (c)(3).

II.  **Background Facts**

Plaintiff, Eddie E. Connor, was born on October 6, 1991 and was ten years old at the time of the administrative hearing on February 21, 2002. (Tr. 44-46).  At the hearing, Plaintiff's mother, Geneva Wells, testified that Plaintiff was in third grade after having repeated second grade and that he was taking regular classes.  (Tr. 44, 46). According to Plaintiff's mother, Plaintiff's school has determined that he does not need to be tested for special education classes, even though she has requested such testing.  Id.

Plaintiff's mother testified that Plaintiff was diagnosed with asthma when he was a month old and that he is currently being treated for asthma problems.  (Tr. 47).  According to Plaintiff's mother, during 2001, Plaintiff had to be taken to the hospital approximately three to four times due to his asthma, and his most recent severe asthma attack caused him to be hospitalized for two days in December, 2001.  (Tr. 52, 61).

3

Plaintiff's mother also testified that as a result of Plaintiff's asthma, his doctors have advised that Plaintiff should not play very much; thus, she tries to make Plaintiff stay in the house. (Tr. 48).

Plaintiff's mother testified that Plaintiff takes medication daily for his asthma and she believes the medication affects Plaintiff and causes him to see things. (Tr. 47-48). Plaintiff's mother also testified that Plaintiff uses an inhaler once a day, and a nebulizer filled with Albuterol two or three times a week, for approximately 30 minutes each time, to help him breathe. (Tr. 49-51).

Plaintiff's mother further testified that Plaintiff has been diagnosed with ADHD. (Tr. 53). Although Plaintiff was prescribed Ritalin for his ADHD, Plaintiff's mother testified that the medication made him worse and it seemed that he was having more frequent asthma attacks. As a result of the side effects, Plaintiff was taken off the Ritalin, and was prescribed another similar medication. (Tr. 54).

Plaintiff's mother described Plaintiff as "a perfect son" and testified that Plaintiff: can bathe himself; can dress himself; ties his shoes; eats well; has friends; goes to church; helps clean the kitchen; attends regular classes; and has no disciplinary problems at school. (Tr. 58-60). Additionally, in

4

a Function Report completed on March 17, 2001, Plaintiff's mother reported that Plaintiff: does not have problems seeing or hearing, and his speech can be understood some of the time; can deliver telephone messages, tell jokes or riddles accurately, and use sentences with "because", "what if", or "should have been"; cannot repeat stories he has read; cannot explain why he did something; talks with family and friends; can read capital and small letters of the alphabet, sometimes read simple words, sometimes read and understand simple sentences and stories in books or magazines; can print some letters, his name and write in longhand (script); can spell most 3-4 letter words and write a simple story with 6-7 sentences; can add and subtract numbers over 10; knows the days of the week and months of the year; sometimes understands money - can make correct change; can tell time; sometimes has trouble staying focused; has no physical limitations in his abilities[4]; has friends and can make new friends; generally gets along with his mother, school teachers and other adults; does not play team sports; does not have any limitations in his ability to help himself and cooperate with others in taking care of his personal needs; gets to school on

---

[4] Although Plaintiff's mother indicated that Plaintiff's physical abilities are not limited, she further indicated that Plaintiff cannot walk, run, throw a ball, ride a bike, jump rope, use roller skates or roller blades, swim, use scissors, work video game controls, or dress/undress dolls or action figures. (Tr. 100).

time; does not accept criticism or correction; does not keep busy on his own; sometimes finishes things he starts; does not work on arts and crafts projects; does not complete homework; and completes chores most of the time.[5] (Tr. 95-103).

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. (Tr. 21). The ALJ further determined that Plaintiff has the severe impairments of asthma, allergic rhinitis, ADHD and a reading disorder. (Tr. 27, 35). The ALJ also found the allegations of Plaintiff's mother regarding the severity and extent of Plaintiff's symptoms and limitations are not fully credible nor supported by objective medical evidence and Plaintiff's reported daily activities. (Tr. 28, 35). Next, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments which meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, App. 1., Subpt. P. (Tr. 35). The ALJ then determined that Plaintiff's impairments, when considered individually or in combination, are not functionally equivalent to a listed

---

[5] Plaintiff's mother reported that she has to watch Plaintiff do his homework, otherwise he will not study or finish his homework. Plaintiff's mother further reported that Plaintiff does not get along very well with his siblings, that he sometimes hits them for no reason, and when he takes Albuterol, he picks fights with them. In addition, Plaintiff's mother reported that Plaintiff sees and hears things, sometimes seems distant, has a hard time staying focused on what he is working on, has problems reading, and failed second grade. (Tr. 102-103).

impairment, and that Plaintiff is therefore not disabled. <u>Id.</u>

**III. <u>Issues on Appeal</u>**

1.   Whether the ALJ erred by failing to order IQ testing be performed on Plaintiff after Plaintiff's counsel specifically requested said testing?

2.   Whether the ALJ erred by failing to advise Plaintiff's counsel that he would not be ordering IQ testing for Plaintiff in order to afford Plaintiff's counsel an opportunity to have testing performed on his own?

**IV.   <u>Analysis</u>**

**A.   <u>Standard of Review</u>**

In reviewing claims brought under the Act, this court's role is a limited one.  The court's review is limited to determining: 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[6]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>,

---

[6] This court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

921 F.2d 1233, 1235 (11ᵗʰ Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703
F.2d 1233, 1239 (11ᵗʰ Cir. 1983)(Substantial evidence is defined
as "more than a scintilla but less than a preponderance," and
consists of "such relevant evidence as a reasonable person would
accept as adequate to support a conclusion.").   In determining
whether substantial evidence exists, the court must view the
record as a whole, taking into account evidence favorable as
well as unfavorable to the Commissioner's decision.   <u>Chester v.
Bowen</u>, 792 F.2d 129, 131 (11ᵗʰ Cir. 1986); <u>Short v. Apfel</u>, 1999
U.S. Dist. Lexis 10163 (S.D. Ala.).

**B.**   **Discussion**

The definition of "disabled" for children under 18 is:

> An individual under the age of 18 shall be
> considered disabled for the purposes of this
> subchapter if that individual has a
> medically determinable physical or mental
> impairment, which results in marked and
> severe functional limitations, and which can
> be expected to result in death or which has
> lasted or can be expected to last for a
> continuous period of not less than 12
> months.

42 U.S.C. § 1382c(a)(3)(C)(i)(2004); <u>see</u> <u>also</u> 20 C.F.R. §
416.906 (2005).   The Social Security regulations provide a
three-step sequential evaluation process for determining
childhood disability claims.   <u>See</u> 20 C.F.R. § 416.924(a)(2005).[7]

---

[7] First, a determination must be made as to whether the claimant is
engaging in substantial gainful activity.  If so, a determination will be made

8

At step one, a plaintiff's age and work activity, if any, are identified.  At step two, the severity of the impairments is identified.  Under the regulations a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c)(2005).  If it is determined that a plaintiff has a severe impairment, the plaintiff must then establish that the impairment results in marked and severe functional limitations. 42 U.S.C. § 1382c(a)(3)(C)(i)(2004). The regulations set forth that an "impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924(d) (2005).

In the case *sub judice*, the ALJ applied the above process

---

that the claimant is not disabled and the claim will not be reviewed further. If it is determined that the claimant is not engaging in substantial gainful activity, next the claimant's physical or mental impairment(s) will be considered first to see if the claimant has an impairment or combination of impairments that is severe. If the claimant's impairment(s) is not severe, a determination will be made that the claimant is not disabled and the claim will not be reviewed further. Finally, if the claimant's impairment(s) is severe, the claim will be reviewed further to determine if the claimant has an impairment(s) that meets, medically equals, or functionally equals the listings. If the claimant has such an impairment(s), and it meets the duration requirement, the claimant will be found disabled. If the claimant does not have such an impairment(s), or if it does not meet the duration requirement, the claimant will be found not disabled.  20 C.F.R. § 416.924(a)(2005); see also Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-1279 (11th Cir. 2004).

for evaluating Plaintiff's claim, and found that Plaintiff has not engaged in substantial gainful activity since his alleged onset of disability, and that he suffers from the severe impairments of asthma, allergic rhinitis, ADHD and a reading disorder. (Tr. 21, 27, 35). Then, as noted *supra*, proceeding to the next step, the ALJ found that these impairments, when considered individually, or in combination, do not meet or medically equal the criteria listed in 20 C.F.R.  Pt. 404, Subpt. P., App. 1.  (Tr. 35).  The ALJ further determined that Plaintiff's impairments, when considered individually or in combination, are not functionally equivalent to a listed impairment, and that Plaintiff is therefore not disabled. Id.

Plaintiff argues that the ALJ failed to develop the record because he did not order IQ testing of Plaintiff despite a resquest from Plaintiff's counsel.  Plaintiff further argues that, at the very least, the ALJ should have afforded Plaintiff's counsel an opportunity to order testing prior to rendering an unfavorable decision. Because the administrative hearing is not adversarial, the ALJ has a duty to develop the record fully and fairly. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir.1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In other words, the ALJ is bound to make every reasonable

10

effort to obtain all the medical evidence necessary to make a determination, 20 C.F.R. § 416.912(d). The ALJ's basic obligation to develop a full and fair record may include ordering a consultative examination. <u>Reeves v. Heckler</u>, 734 F.2d 519, 521-522 (11th Cir. 1984). "Consultative examinations are not required by statute, but the regulations provide for them where warranted." 20 C.F.R. § 404.1517 (2000) ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). However, the ALJ is not charged with making Plaintiff's case for him. Plaintiff has the burden of proving he is disabled. <u>See</u> 20 C.F.R. § 416.912(a); <u>see also</u> <u>Hale</u>, 831 F.2d at1011; <u>Bloodsworth</u>, 703 F.2d at 1240.

Based on a careful review of the record evidence, the undersigned finds that the ALJ's decision is supported by substantial evidence, and that the ALJ did not err in his denial of Plaintiff's request for IQ testing as the school records and medical evidence provided the ALJ with sufficient information upon which to make an informed decision. As a threshold matter, it should be noted that Plaintiff has not contested the ALJ's finding that his impairments of asthma, allergic rhintis, ADHD

11

and reading disorder, when considered individually or in combination do not meet or medically equal a listing. Moreover, Plaintiff does not dispute the ALJ's finding that his impairments do not functionally equal a listed impairment.

Instead, as noted *supra*, Plaintiff argues that IQ testing should have been ordered as Plaintiff had repeated second grade, was known to have been diagnosed with ADHD and had academic scores in the 68 to 79 range during his repeat of the second grade. Plaintiff further notes that based on his consultative examination of Plaintiff, psychologist John R. Goff, Ph.D. noted that Plaintiff appeared to be functioning within the average to low range of psychometric intelligence but states that "one cannot always tell by looking and there might be a problem in that area." (Tr. 227). The ALJ's decision however clearly reflects that he considered Plaintiff's request for consultative IQ testing, and decided, based on the substantial record evidence, including Plaintiff's academic and medical records, that such testing was not necessary as the evidence does not demonstrate, let alone suggest, that Plaintiff is mentally impaired.

The record contains an academic evaluation that was completed by Plaintiff's Head Start teacher in 1997. On the evaluation, the teacher indicated that Plaintiff performs well

12

academically with classmates, and although he is slow in some academic skills, such is normal for students his age. Additionally, the teacher noted that Plaintiff is very mannerable, he interacts wells with teachers, his school work is age appropriate, he is able to follow and understand instructions, he is very independent and though he day dreams a bit, he is able to concentrate well when trying to reach a solution. The teacher opined that Plaintiff was well behaved, and listed no weaknesses. (Tr. 178-179).

The record also contains Plaintiff's grades from first grade, which are dated May 1999. (Tr. 192). Plaintiff successfully completed first grade, in a regular class, and his year end grade averages were as follows: reading (64); math (81); language (71); science (78); social studies (75); spelling (59); health (80) and writing (80). Id.

Upon his promotion to second grade, Plaintiff was in regular classes; however, he failed second grade. His year end grade averages ranged from 42 to 58. (Tr. 191). The following year, upon repeating the second grade, Plaintiff's year end grade averages were as follows: conduct (90); reading (79); math (78); language (68); science (76); social studies (76); spelling (76) health (77) and writing (75). (Tr. 197). In an academic evaluation dated January 2001, his second grade teacher reported

13

that Plaintiff had no problem comprehending and following oral instructions, and only slight problems recalling and applying learned material and expressing ideas in written form.[8]   The teacher noted that Plaintiff had a very serious problem in the area of reading and/or comprehending written material.   The teacher further opined that Plaintiff could understand and follow directions, had good self care skills, got along with other children, followed class rules, had no behavior problems, had no problems with concentration, pace, or ability to complete tasks on time, and was able to carry out simple and detailed instructions. (Tr. 163-168).

The record also contains an academic evaluation by Plaintiff's third class teacher dated January 7, 2002.   The teacher opined that Plaintiff performed academically on the same level as his classmates, and that he had no problems following instructions, working independently, concentrating or paying attention in class.   She further noted that Plaintiff sometimes, but not often, had problems comprehending reading or math, but overall, she indicated that she knew of no academic, behavioral, emotional or physical problems with Plaintiff. (Tr. 188-189).

---

[8]With respect to applying problem solving skills in learning areas, it is not clear how the teacher rated Plaintiff because she circled the category for slight problem in this area, as well as the category for serious problem in this area. (Tr. 164).

14

John R. Goff, Ph.D., performed a consultative psychological examination of Plaintiff on February 22, 2001. He noted that Plaintiff was friendly and affable, appropriately groomed and dressed, and that his discourse was generally logical and coherent; however, sometimes, his speech became tangled whereupon, Plaintiff would stare away. Dr. Goff administered the Reitan-Indiana Aphasia Screening Test and the WRAT-III. (Tr. 225-229). Dr. Goff found that Plaintiff's word recognition was on a first grade level and that his spelling/math was on a second grade level. He noted that Plaintiff uses his memory to help with reading and stated that this "suggests that this youngster is probably relatively bright", but also suggests that he memorizes words for the most part, but this is not likely the way he is being taught. (Tr. 227). He concluded that Plaintiff may have a reading disorder and was likely functioning within the average to low average range of psychometric intelligence; however, he did not perform any intellectual testing. Dr. Goff also noted that he did not see "any particular suggestions for attention deficit hyperactivity disorder" as Plaintiff was polite, cordial and kept attention well. He also opined that Plaintiff did not have any developmental delays. (Tr. 228-229).

Moreover, as observed by the ALJ, while the medical records indicate that Plaintiff has been treated for asthma, allergies

15

and other physical problems, the record is devoid of any evidence that Plaintiff complained of, or was treated for a cognitive impairment. In fact, in statements dated March 31, 1997 and September 18, 2000, Plaintiff's treating physician, Dr. Singleton, opined that Plaintiff should be able to compete equally with other children when free of asthma attacks. (Tr. 29, 205-206). Additionally, in a report dated January 22, 2002, Dr. Kamelmaz indicated that since treating Plaintiff for approximately one month, he had not tested Plaintiff for ADHD and did not know if any other physician had tested Plaintiff. (Tr. 251-252). Dr. Kamelmaz further indicated that Plaintiff was still taking Adderall and opined that Plaintiff's ADHD was under fair control.

Furthermore, the ALJ correctly determined that Plaintiff's mother's allegations of marked and severe functional limitations are inconsistent with the record medical evidence, records submitted by Plaintiff's school and Plaintiff's daily activities. To that end, the ALJ observed that Plaintiff's mother described Plaintiff as the "perfect child" and testified that he does his homework when he gets home from school; reads; draws pictures; walks around the yard and looks at the chickens; sometimes rides a bicycle; bathes himself; dresses himself; ties his shoes; eats well; has friends; goes to church; helps clean the kitchen;

attends regular classes; and has no disciplinary problems at school. (Tr. 20-21, 28, 56, 58-60). Additionally, at the administrative hearing, Plaintiff demonstrated that he could tell time on an analog clock, and that he is able to read a traffic light. (Tr. 60-61). Moreover, in a Function Report completed on March 17, 2001, Plaintiff's mother reported Plaintiff: can deliver telephone messages, tell jokes or riddles accurately, and use sentences with "because", "what if", or "should have been"; talks with family and friends; can read capital and small letters of the alphabet, sometimes read simple words, sometimes read and understand simple sentences and stories in books or magazines; can print some letters, his name and write in longhand (script); can spell most 3-4 letter words and write a simple story with 6-7 sentences; can add and subtract numbers over 10; knows the days of the week and months of the year; sometimes understands money – can make correct change; can tell time; has no physical limitations in his abilities; has friends and can make new friends; generally gets along with his mother, school teachers and other adults; does not have any limitations in his ability to help himself and cooperates with others in taking care of his personal needs; gets to school on time; and completes chores most of the time. (Tr. 30, 95-103). Similarly, in a Function Report completed March 6, 1997, Plaintiff's mother reported that

17

Plaintiff has no limitations in: communicating; understanding and using what he has learned; physical abilities; his behavior with other people; his habits and ability to take care of his personal needs; and paying attention and sticking with a task. (Tr. 104-111).

The ALJ observed that although Plaintiff's mother reported that Plaintiff did not get along very well with his siblings and sometimes hit them for no reason, the evidence indicates, and Plaintiff's mother reported, that Plaintiff has no disciplinary problems and generally gets along with teachers and other adults, and there is no evidence that Plaintiff's mother ever complained to any physician regarding any alleged disciplinary problems. (Tr. 58, 60, 98, 100, 109, 205-208, 209-212, 215-223, 243, 244, 245, 252-252, 253-256). Moreover, as noted *supra*, Plaintiff's teachers reported that Plaintiff got along well with his peers and teachers, was well behaved at school, and required no disciplinary action at school. (Tr. 167, 177-181, 183-184).

In light of the above-referenced evidence, the undersigned concludes that the ALJ did not err in not ordering consultative IQ testing. Indeed, the record evidence, including Plaintiff's school and medical records, as well as his reported daily activities, clearly provided the ALJ with sufficient information

upon which to make an informed decision[9].  While Plaintiff has faced some academic challenges, there is simply nothing in the record that suggests that his intellectual functioning is abnormally low.  Moreover, the ALJ's findings that Plaintiff's impairments do not meet or medically equal a listed impairment, and that they are not functionally equivalent to a listed impairment is supported by substantial record evidence.

**V.  Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income benefits be **AFFIRMED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this **31st** day of **March, 2005**.

s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

---

[9]Additionally, the undersigned notes that while there was limited discussion of consultative IQ testing during the administrative hearing, it is not clear from the hearing transcript that the ALJ committed to ordering the testing, as opposed to agreed to hold open the record for such testing and for Plaintiff's academic records which were to be provided by Plaintiff's counsel. In any event, as Plaintiff's representative, his counsel was free to initiate and submit any additional testing or records he deemed appropriate to advance his client's case. (Tr. 62-64).

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.    <u>**Objection**</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    <u>**Opposing party's response to the objection.**</u>  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.     **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.


                     s / SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE